IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Rebecca Collins, ) | |
|      ) | |
|      Plaintiff, ) | CA No. 7:06-1128-HMH |
|      ) | |
|      vs. ) | **OPINION AND ORDER** |
|      ) | |
| Qwest Disability Plan and ) | |
| Qwest Communications International, Inc., ) | |
|      ) | |
|      Defendants. ) | |

This matter is before the court for review of the Qwest Disability Plan ("Plan") third-party administrator's decision to deny long-term disability ("LTD") benefits to Rebecca Collins ("Collins") under a plan governed by ERISA.[1]  Collins seeks benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).  (Joint Stipulation ("J.S.") ¶ 1.)  The parties have filed a joint stipulation and memoranda in support of judgment pursuant to the court's Specialized Case Management Order for ERISA benefits cases.  The parties agree that the court may dispose of this matter consistent with the joint stipulation and memoranda.  (J.S. ¶ 8.)

The parties disagree as to whether Reed Group Ltd. ("Reed"), the third-party Plan administrator ("third-party administrator"), "abused its discretion, under the appropriate standard of review," in denying Collins LTD benefits.  (J.S. ¶ 7.)  For the reasons below, the court finds that the abuse of discretion standard applies, and under that standard, the third-

---

[1]Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.

1

party administrator did not abuse its discretion in denying Collins LTD benefits because there is no substantial evidence to support the finding that Collins was unable to perform any occupation on March 1, 2004.

## I. FACTUAL AND PROCEDURAL HISTORY

From February 1998 until May 2001, Collins worked for Qwest Communications International, Inc. ("Qwest") as a sales engineer and technical consultant. (R. 307.) Collins ceased working because of fibromyalgia, anxiety, and depression. The Plan is self-insured by Qwest. (Id. 10) Reed is the Plan's third-party administrator retained to decide disability claims. (Def.'s Mem. Supp. J. 10 Ex. A (Professional Services Agreement).)

In March 2005, Collins made a claim for LTD benefits, alleging that she was unable to work due to her fibromyalgia.[2] The third-party administrator denied Collins' claim for LTD benefits on June 7, 2005, alleging that there was "no objective medical documentation" to support a finding that Collins was totally disabled. (R. 130.)

In order to receive LTD benefits under the Plan, Collins must be found disabled. Under the pertinent language of section 5.1 of the Plan, Collins is disabled if she is "unable to engage in any occupation or employment for which [s]he is qualified, or may reasonably become qualified by training, education or experience, other than one which pays less than 60% of Base Pay at the time [s]he became Disabled." (Id. 23.) Further, in determining

---

[2]Collins brought a previous lawsuit against Qwest in 2003, which was settled in February 2004. As part of the settlement, Qwest allowed Collins to file a new claim seeking LTD benefits; Collins waived her right to any LTD benefits prior to April 1, 2004; and Qwest waived the Plan's requirement that Collins be employed by Qwest and exhaust short-term disability benefits prior to seeking LTD benefits. The remainder of the Plan's terms apply to the instant LTD benefits claim. (Def.'s Mem. Supp. J. 2-3.)

whether she is disabled, Collins "must support the claim for Disability and include Objective Findings, Diagnosis, and any other information relevant to the nature and duration of the Disability." (Id. 23.) The Plan defines objective findings as "written documentation of observable, measurable and reproducible symptoms, such as, but not limited to, x-ray reports, elevated blood pressure readings, and lab test results." (Id. 7.)

In making its decision, the third-party administrator considered Collins' medical records, an independent physician review by Dr. Tanya Lumpkins ("Dr. Lumpkins"), a rheumatologist, dated May 13, 2005, a transferable skills analysis, and a labor market survey. (Id. 130.) Collins' medical records included office notes of Dr. Robert Dorlon ("Dr. Dorlon") from February 28, 2002, through January 12, 2005. Dr. Lumpkins contacted Dr. Dorlon, who opined that Collins' condition was stable. (R. 310) In addition, Dr. Dorlon indicated that Collins was not totally disabled and could perform sedentary work that did not require repetitive activity or prolonged standing. (Id.) Further, Dr. Dorlon indicated that Collins suffered from fibromyalgia, anxiety, and depression. (Id.) Dr. Dorlon recommended exercise and activity as part of Collins' treatment. (Id. 311.) Based on her review, Dr. Lumpkins found that Collins was not totally disabled. (Id. 312).

In addition, the transferable skills analysis found that jobs consistent with Collins' skills and limitations were available with incomes of at least 60% of Collins' final base salary at Qwest. (R. 138-43.) A labor market survey identified "at least 50 positions" locally. (Id. 133-37.)

The third-party administrator issued a denial letter on June 7, 2005. (Id. 128-32.) On October 19, 2005, Collins appealed the denial of her claim to the appeals board. (Id. 87-88.)

3

She supplemented the record with additional medical documentation, including a physical capacity form prepared on October 13, 2005, by Dr. Dorlon, and a vocational report prepared by Benson Hecker, Ph.D. ("Dr. Hecker").  (Id.)   Dr. Dorlon indicated on the physical capacity evaluation that Collins could only sit for an hour, stand for an hour, and walk for an hour in an eight-hour day.  (R. 239.)  Further, in his answer to the multiple-choice question – "In your best judgement, to what extent will the pain and/or prescribed medication affect this patient's ability to perform his/her previous work activities?" – Dr. Dorlon noted that Collins "will be totally restricted and thus unable to function as [sic] a productive level of work." (Id. 240.)  Dr. Dorlon further stated that "increased activity causes increased pain."  (Id. 239.)

In the vocational report, Dr. Heckler stated that he interviewed Collins, reviewed her medical records, and concluded that Collins is unable to work.  (Id. 241-49.)   Dr. Hecker indicated that in formulating his opinion "no formalized evaluative procedures were initiated" because he "felt that sufficient information was obtained during the interview and from the medical records to allow a vocational opinion to be offered."  (Id. 249.)

The appeals board had an independent physician review performed by Dr. Jacqueline Hess ("Dr. Hess"), an internist and occupational medicine specialist.  Dr. Hess reviewed the entire record, including the physical capacity evaluation, and concluded that "[n]o objective medical information is provided which supports patient's inability to function at work in a sedentary capacity."  (R. 66).  Further, an independent psychiatrist, Dr. Marcus Goldman ("Dr. Goldman"), reviewed the record and determined that Collins' diagnosis of depression

4

and anxiety was not supported by objective medical evidence. (Id. 69.) The appeals board denied Collins' appeal on February 20, 2006. (Id. 60-63.) This litigation ensued.

## II. DISCUSSION OF THE LAW

### A. Standard of Review

The parties dispute the applicable standard of review. The Plan argues that the appropriate standard is abuse of discretion, which provides that the administrator's "discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 341 (4th Cir. 2000); (Def.'s Reply Pl.'s Mem. Supp. J. 2.). A decision is reasonable if it is supported by substantial evidence. "Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984) (internal quotation marks omitted), overruled by implication on other grounds by, Black & Decker Dis. Plan v. Nord, 538 U.S. 822 (2003). According to the Joint Stipulation, Collins argues that a modified abuse of discretion standard applies. (J.S. ¶ 3.)

Under the terms of the Plan, the third-party administrator has discretionary authority. (R. 67.) "[W]hen an administrator . . . with discretion is operating under a conflict of interest such that its decision to award or deny benefits impacts its own financial interests, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion." Bernstein v. CapitalCare Inc., 70 F.3d 783, 787 (4th Cir. 1995) (internal quotation marks

omitted); see Bedrick v. Travelers Ins. Co., 93 F.3d 149, 152 (4th Cir. 1996) ("Inasmuch as the law is highly suspect of fiduciaries having a personal interest in the subject of their trust, the abuse of discretion standard is not applied in as deferential a manner to such plans.") (internal quotation marks omitted).

Collins has the burden of presenting evidence of a conflict of interest. See Colucci v. Agfa Corp. Severance Pay Plan, 431 F.3d 170, 180 (4th Cir. 2005). Other than arguing that the modified abuse of discretion standard applies in the Joint Stipulation, Collins has presented no evidence of a conflict of interest. As such, the court finds that Collins has failed to submit sufficient evidence to establish that Reed's role as administrator of the STD benefits under the Plan creates a conflict of interest. As such, the abuse of discretion standard applies.

### B.  Denial of LTD Benefits

The record reveals that Collins suffers from fibromyalgia, anxiety, and depression. However, the issue before this court is whether Collins' condition renders her disabled under the Plan. Collins submits that this "case turns on the interpretation of two documents," Dr. Dorlon's physical capacities evaluation of October 13, 2005, and Dr. Hecker's written vocational report. (Pl.'s Mem. Supp. J. 1.) Both of these physicians opine that Collins is unable to work. Collins argues that these two documents indicate that she is entitled to LTD benefits under the Plan.

"The plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning." Kress v. Food Employers Labor Relations Ass'n, 391 F.3d 563, 568 (4th Cir. 2004) (internal quotations marks omitted). "The award of benefits under any ERISA

6

plan is governed . . . by the language of the plan itself. If the denial of benefits is contrary to the clear language of the Plan, the decision [of the fiduciary] will constitute an abuse of discretion." Lockhart v. United Mine Workers of Am. 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993) (internal quotations marks and citations omitted).

The Plan requires that Collins "must support the claim for Disability and include Objective Findings, Diagnosis, and any other information relevant to the nature and duration of the Disability." (R. 23.) Objective findings are "written documentation of observable, measurable and reproducible symptoms, such as, but not limited to, x-ray reports, elevated blood pressure readings, and lab test results." (Id. 7.)

Collins makes no argument that these two documents are supported by objective medical evidence. In conclusory fashion, Collins submits that these two documents show that she is entitled to LTD benefits under the Plan. (Pl.'s Mem. Supp. J. 1-2.) The court disagrees.

"Courts in the Fourth Circuit routinely hold that it is not an abuse of discretion for an ERISA-regulated plan's claim administrator to deny claims unsupported by objective evidence." Havens v. Metro. Life Ins. Co., No. 05-1136, 2006 WL 2371117, at *6 (S.D. W. Va. Aug. 14, 2006) (unpublished). Further, ERISA plan administrators are not required to grant any special deference to a treating physician's opinion over those of non-treating consultants. Black & Decker Dis. Plan v. Nord, 538 U.S. 822, 834 (2003).

Dr. Dorlon's October 13, 2005, physical capacities evaluation does not reference any objective evidence. (R. 239-40.) The evaluation consisted of check-the-box and multiple-choice questions. (Id.) Dr. Dorlon indicated that Collins is "totally restricted and thus unable

7

to function as [sic] a productive level of work." (Id. 240.) However, the basis for this opinion is not articulated in the evaluation or in any other medical record from this time period. Dr. Hecker's vocational report is based on certain medical records and an interview of Collins. As Dr. Hecker noted, "no formalized evaluative procedures were initiated" because he "felt that sufficient information was obtained during the interview and from the medical records to allow a vocational opinion to be offered." (Id. 249.)

In contrast, Dr. Lumpkins and Dr. Hess reviewed the objective evidence in the record and found that it did not support the conclusion that Collins was totally disabled. (Id. 310-12, 65-69.) Based on her review, Dr. Lumpkins found that Collins

> has not been documented to have any physical deficit that would prevent the claimant from performing routine tasks of a sedentary position. The medications the claimant takes regularly would preclude her from working at heights, driving a company vehicle, operating heavy machinery or working with safety sensitive material.

(R. 312). Dr. Hess found as follows:

> The patient's overall status and exam reveals self-reported pain and fatigue. There is tenderness on exam but no evidence of objective neurological or musculoskeletal loss. The patient is capable of the [activities of daily living] including driving. Treatment for fibromyalgia includes regular activity and exercise. No objective medical information is provided which supports patient's inability to function at work in a sedentary capacity.

(Id. 66.) Further, Dr. Hess reviewed the entire record, including the physical capacities evaluation, and concluded that "[n]o objective medical information is provided which supports patient's inability to function at work in a sedentary capacity." (Id. 66).

Moreover, with respect to Collins' anxiety and depression, Dr. Goldman reviewed the record and noted that it "is remarkable for its virtual complete absence of relevant

psychiatric data." (Id. 69.) Dr. Goldman found that the record contains

> no notes from a psychiatrist, no therapy notes, no comprehensive mental status examinations and no data detailing global functionality. There are no measured cognitive data. It is not clear if she is in active mental health treatment. Her subjective complaints, few and far between, if at all, are poorly defined. She is not noted to have suicidal ideations/HI or psychosis. The data are [sic] insufficient to warrant a major DSM affective, anxiety or psychotic illness that would preclude work.

(Id. 69.) There is no objective medical evidence that Collins' anxiety and depression prevented her from working. Collins has failed to provide sufficient objective medical evidence that she is totally disabled.

To the extent Collins is alleging that she cannot prove that her fibromyalgia is disabling because its severity cannot be established with objective medical evidence, this argument fails under the facts of this case. See Conrad v. Cont'l Cas. Co., 232 F. Supp. 2d. 600, 604 (E.D.N.C. 2002) (noting that fibromyalgia "though recognized by the medical community as real and potentially disabling, is primarily diagnosed by a physician. Thus its existence or non-existence is verifiable. However, its severity and ultimate effect is primarily based upon the patient's subjective self-reporting. Thus the question of whether the disease has caused the plaintiff to be disabled remains diffuse.") In May 2005, Dr. Lumpkins contacted Dr. Dorlon, and Dr. Dorlon stated that Collins was not totally disabled and could perform sedentary work. (Id. 310-12.) According to Qwest, Collins contends that Dr. Dorlon did not inform Dr. Lumpkins that Collins could perform sedentary work. (Def.'s Mem. Supp. J. 12.) However, there is no evidence in the form of an affidavit from Dr. Dorlon or otherwise that states that he informed Dr. Lumpkins that Collins could not work.

In addition, there is no evidence in the record that Collins' condition worsened after Dr. Lumpkins contacted Dr. Dorlon.  In fact, the record reveals that Collins had only one visit with Dr. Dorlon after May 2005, on July 1, 2005.  The July 1, 2005, progress note does not indicate that Collins' condition was worsening.  (R. 252.)  In fact, the progress note states that Collins' back pain is chronic.  (Id.)  At best, Dr. Dorlon has offered conflicting opinions concerning Collins' ability to work.  "The Fourth Circuit has held that it is not an abuse of discretion for a plan fiduciary to deny disability pension benefits where conflicting medical reports were presented."  Elliott v. Sara Lee Corp., 190 F.3d 601, 606 (4th Cir. 1999).  Based on the foregoing, the court finds that the decision to deny Collins LTD benefits was supported by substantial evidence.

It is therefore

**ORDERED** that the third-party administrator's decision denying Collins LTD benefits is affirmed.

**IT IS SO ORDERED**.

                                s/Henry M. Herlong, Jr.
                                United States District Judge

Greenville, South Carolina
October 16, 2006